SMITH, Respondent, v. Johnson, Appellant.

(138 N. W. 18.)

**1. Record for Review—Certification of Evidence—Sufficiency of Evidence.**

Where the trial judge did not certify that the evidence in support of a finding was in the appeal record, the sufficiency of such evidence cannot be reviewed.

**2. Evidence—Parol to Explain Uncertain Written Contract.**

In a vendor's action for specific performance of a contract providing that the price should be paid in cash or by "accepted mortgage," held, that said phrase is not clear in meaning, and that parol evidence of conversations and circumstances attending execution of the contract was admissible to show intent of parties in using said phrase. Sec. 1256, Civ. Code.

**3. Evidence—Congressional "lots" as Survey Subdivisions—Presumption as to Evidence—Record.**

Where, in an action for specific performance, trial court

found that land lying along east side of township lines is desig-
nated on government plats as lots, running in succession from
north to south, that it is common to describe such lots by half
and quarter section numbers, that, so described, the lands are
definitely known and readily ascertained, and that the land
described in the contract lies along eastern side of township;
held, in absence from the record of the evidence on which the
finding was based, and there being no evidence showing that
divisional lines of the section are not identical with lot lines,
it is presumed the evidence warranted the finding.

4. **Specific Performance—Evidence—"Accepted Mortgage"—Suffi-
ciency of Parol Evidence.**

Evidence in vendor's action for specific performance of sale
contract, which provided that the land should be paid for in
cash or by "accepted mortgage," held sufficient to sustain a
finding that that phrase was intended by the parties to refer to
an existing mortgage then on the land and was to be assumed
by purchaser, unless he should choose to pay all cash and
receive land clear of mortgage.

5. **Specific Performance—Tender of Deed—Sufficiency of Description.**

A deed tendered in performance of sale contract described
land by congressional lots according to the government survey,
while the contract described it by sectional subdivisions "ac-
cording to government survey," did not render the tender in-
sufficient, where the deed description was sufficient to identify
the land as described in contract.

6. **Specific Performance—Finding as to Quantity of Land—Intent of
Parties—Judicial Notice of Government Survey Subdivisions—
Burden of Proof.**

A "conclusion of law" in an action for specific performance,
was to the effect that the deficiency of acreage less than 480
acres was only thirty and 87-100 acres "or about six per cent"
and that it was covered by the words "more or less, according
to the government survey," contained in the sale contract which
described the lands by sectional subdivisions. Held, that, while
the court will take judicial notice that under congressional
survey system each sectional subdivision, except those adjoin-
ing the north and west township lines, is presumed theoreti-
cally to contain the amount of land called for by the description,
and that lands adjacent to said township lines and described
as lots may vary greatly in quantity, yet this rule does not
apply to private contracts of sale involving actual intent of the
parties. Held, further, that, taking judicial notice of the
material facts connected with this contract, in absence of speci-
fic evidence as to knowledge of the parties that government
survey described this land as lots, it will be presumed both
parties intended to risk only such variation of quantity as

might occur in sectional subdivisions, and not the variation of quantity occurring in congressional lots; that the burden of proof was on plaintiff to show that defendant understood the words "more or less" to relate to such lot variations; and, not having so shown, the trial court's findings and judgment are not sustained.

7.  **Interest—Rate of Interest Under Specific Performance—Damages.**
    Under Civ. Code, Sec. 2294, providing a measure of damages for breach of obligation to pay money, it was error, in a vendor's action for specific performance of land sale contract, to award him interest on purchase money in excess of legal rate, and to find damages in any amount which would exceed such rate.

8.  **Specific performance—Damages for Use or Profits—Error.**
    In a vendor's action for specific performance of land sale contract, it was error to permit him to testify as to amount of his loss from not having obtained any use or profits of the land.

(Opinion filed October 25, 1912.)

Appeal from Circuit Court, Custer County. Hon. Levi McGee, Judge.

Action by William M. Smith against Erland H. Johnson, for specific performance of a contract of sale of land and for damages. From a judgment in favor of plaintiff and an order denying a new trial, defendant appeals. Reversed, and remanded for new trial.

*Null & Royhl, for Appellant.*

The defendant answers, setting up that the description of the property is so indefinite, uncertain and defective that plaintiff's action for specific performance cannot be maintained.

Also defendant alleges that the lands are properly described as lots 2, 3 and 4 of Section 30 and not as the West ½ of Section 30. That these lots do not contain 40 acres each, on the contrary, they contain only 89.13 acres.

The contract calls for 480 acres more or less according to the government survey. It will be noticed that there is no government survey of the West ½ of S. W. ¼ and the S. W. ¼ of the N. W. ¼ of Sec. 30,, Sec. 30 being on the west side of the township and the section not containing 640 acres, the west subdivisions of the west quarter sections were surveyed and described as lots 1, 2, 3, 4, of Sec. 30. This is a very important feature of the question we are now considering.

It is well understood among persons familiar with land titles

that where the government survey describes the N. W. ¼, it means a quarter section containing 160 acres subject only to the variations due to possible inaccuracies in the survey, but where the government survey describes the lands as lots, it is notice that the lots do not conform to the system of survey and may contain the remnants of the survey without regard to quantity. That is to say, lot 1 of section 30 does not mean either a quarter section or a quarter of a quarter section. It does not mean either 160 acres or 40 acres. These lots need not and do not conform to the lines of regular subdivisions.

In the case at bar, lots 1, 2, 3, 4, of Sec. 30 contain 118.84 acres, hence the north line of the N. W. quarter running east and west would be 20.58 rods short of the conventional 160 rods. Eighty rods are apportioned to the east forty and the remaining 59.42 rods are left as the north boundary of lot 1. Now a conveyance of the N. W. ¼ of the N. W. ¼ of Section 30 would not convey lot 1, but it would convey one-fourth of the quarter section. The quarter section contains 139.42 acres. One-fourth would be 34.855 acres, while lot 1 contains only 29.71 acres, a difference of 5.145 acres. This applies to lots 2, 3, 4 the same as to lot 1.

This presents two propositions: First, by describing the lands by the usual designation, the defendant might reasonably suppose the land to be of regular survey, subject only to the inaccuracies common to land surveys, and that he was getting full forties. Had it been described as lots, he would then have been put on inquiry as to their acreage. On this basis, defendant will get 30.87 acres less than he contracted for.

Second, plaintiff by agreeing to convey these lands by the usual designations has agreed to convey 15.435 acres more than is contained in lots 2, 3, 4. This is to say, plaintiff agreed to convey the W. ½ of the S. W. ¼ and S. W. ¼ of the N. W. ¼. He tenders a deed to lots 2, 3, 4.

Under these facts, we think the court erred in permitting the plaintiff to testify to the conversation concerning the number of acres.

The court erred in granting a decree for specific performance of a contract containing the one description where a conveyance by the other description only is tendered.

There was no mention in the contract of any mortgage on the land. In finding 2 (page 18 herein) the court finds that there is a mortgage on the land, $4,875.00 and interest at 7 per cent from March 1, 1910.

At the trial, the court permitted plaintiff to testify that the phrase "accepted mortgage" meant the assumption of the mortgage on the land. This we think was error. There is no ambiguity in the language used "to pay in cash or by accepted mortgage."

The court erred in finding as a fact in finding 5 (page 19 herein) that accepted mortgage meant that defendant could assume the mortgage on the land.

Plaintiff's damages.

The only testimony concerning plaintiff's damages was the testimony of the plaintiff in which he testified that "I think that a thousand dollars is a very light loss for me." (Page 53-54 herein.)

The court in finding 19 finds plaintiff's net damages to be $750. In the decree plaintiff is awarded $500.00 damages.

In finding 14, the court finds the lands to be worth $10,000.00, or four hundred dollars more than the purchase price.

On the record as presented, we cannot see how this judgment for damages can be sustained and we think the court erred in awarding damages.

Plaintiff has possession of the lands hence has not suffered any actual damages and there are no equities in his favor.

*Lawrence H. Hedrick,* for Respondent.

There is no testimony that the property to be conveyed was not easily ascertained. On the other hand the testimony of Loomis S. Cull, register of the U. S. land office, (page 48, appellant's statement of fact and brief), shows clearly that a description of lots by half quarter or quarter quarter sections is such a description that the land referred to is easily ascertained.

Such a description as in this case is very usual, and the land meant is absolutely certain of ascertainment. There is no question about what land was referred to, only one tract of land would answer the description in its usual and ordinary acceptation..

"That is certain which can be made certain." Sec. 2437 Civil Code (S. D. 1903),; Coughorn v. Sundback, 9 S. D. 487; Ford et al. v. Ford, 24 S. D. 648 (citing Jones on Real Prop.

Conveyancing, Sec. 323; Civil Code, Sec. 2437) ;4 Am. & Eng. Enc. of Law, 2d Ed. 793-796-797-798, and authorities there cited; 13 Cyc. p. 635. i (I); Brown v. Hardin, 21 Ark. 327; Hazelwood v. Ragan, 95 Tex. 295.

Quantity is the least certain element of description, and even where a definite area is referred to in describing the lands it will be taken as merely descriptive and will not prevail against a more particular description by reference to monuments or to courses and distances.   4 Am. & Eng. Enc. of Law, 789, 5 e (I).

The statement of the quantity of land supposed to be conveyed and inserted in a deed or patent by way of description must yield to courses and distances, unless there is a clearly expressed intention to the contrary.   5 Cyc. 929 b.

Where a deed contains a particular description of the property conveyed it will not be controlled by a recital therein of the quantity, unless it clearly appears that it was the intention to convey only a definite quantity.   13 Cyc. 9635 i (II).

What is the meaning of the term "more or less?"

Generally in its plain and most obvious meaning an expression which shows that the parties were to run the risk of gain or loss, as there might happen to be an excess or deficiency in the estimated quantity; words of safety and precaution and intended to cover some slight or unimportant inaccuracy; words used in contracts or conveyances to qualify the representation of quantity in such manner that, if made in good faith, neither party should be entitled to any relief on account of deficiency or surplus.   27 Cyc. p. 913.

How is the term construed?

Where land is described in a deed by sectional subdivisions or by metes and bounds the words "more or less" when used in connection with such description are construed as used for the purpose of proximately designating the quantity of land within such subdivision or boundaries and not as referring to the state of the title to such land; where, however, such words are used in connection with a description in which the number of acres conveyed is stated, the recital of quantity is a matter of description; and the use of the words "more or less" has been construed as meaning that the parties run the risk of gain or loss in respect to quantity.   13 Cyc. p. 639; Hodges v. Kowing, 7 L. R. A. 87;

4 Am| & Eng. Enc: of Law, p. 792 (7), citing numerous cases and excellent notes; 20 Am. & Eng. Enc. of Law, p. 873, Art. 1, 1; 20 Am. & Eng. Enc. of Law, p. 875; Watson v. Cline, 42 S. W. 1038.

These words have the same effect in an executory contract as in a deed.

In an executory contract for the sale and purchase of land for an entire sum, the insertion of the words "more or less" or equivalent words, will control a statement of the quantity of land or of the length of one of the boundary lines in the same manner as it would in a deed, so that neither party will be entitled to relief on account of a deficiency or surplus unless in case of so great a difference as will naturally raise the presumption of fraud or gross mistake in the very essence of the contract, citing: 20 Am. & Eng. Enc. of Law, p. 877; Nobles v. Grogins, 99 Mass. 235; Coughenour v. Stauft, 77 Pa. St. 192.

What deficiency or excess will the words "more or less" cover?

Immaterial differences: Deficiency of 5 acres in a conveyance of 41 acres. Winch v. Winchester, 1 Ves. & B. 375.

In a conveyance of 47½ acres , more or less, for the consideration of $2,500.00, a deficiency of 7 acres was held to be immaterial. Stebbins v. Eddy, 4 Mason (U. S.) 414.

Deficiency of 31 acres in a conveyance of 500 acres, more or less. Frederick v. Youngblood, 19 Ala. 680, 54 Am. Dec. 210. And we cite: Estes v. Odom, 91 Ga. 600; King v. Brown, 54 Ind. 368; Young v. Craig, 2 Bibb (Ky.) 270; Dale v. Smith, 12 Am. Dec. 64; Williford v. Bentley, 5 J. J. Marsh, (Ky.) 181; Clark v. Scammon, 62 Me. 47; Hurt v. Stull, 3 Md. Ch. 24; Hall v. Mayhew, 15 Md. 551; Austrian v. Dean, 23 Minn. 62; Phipps v. Tarpley, 24 Miss. 597; Mann v. Pearson, 2 Johns, (N. Y.) 39; Faure v. Martin, 7 N. Y. 210, 57 Am. Dec. 515; Ketchum v. Stout, 20 Ohio, 453; Smith v. Evans, 6 Binn. (Pa.) 102; Pendleton v. Stewart, 5 Call. (Va.) 1, 2 Am. Dec. 583; Caldwell v. Craig, 21 Gratt. (Va.) 132; Graham v. Larner, 87 Va. 222; Brown v. Wallace, 4 Gill & J. (Md.) 488; Rathke v. Tyler, 111 N. W. 435.

It will be noted from an examination of the above cases that the percentage of deficiency where the words "more or less"

would not cover the same has scarcely ever been less than 25 per cent., unless it was clearly shown that the sale was by the acre, and not in gross.

Where a map, plan or survey of the premises conveyed is referred to in a deed it is to be considered as a part of the latter instrument and is to be construed in connection therewith; and the courses, distances or other particulars which appear on such map, plan, or survey are as a general rule to be considered as the true description of the land conveyed.   13 Cyc. p. 633 (II.).

When a map or plat is referred to in a conveyance, it becomes, for the purpose of the description and identification of the land, a part of the deed.

Courses and distances must yield to monuments.   Nicolin v. Schneiderhan, 33 N. W. p. 33.

Where a survey is referred to in a deed for greater certainty, it legally forms a part of it, and both should be construed together.   Heffelman v. Otsego W. P. Co., 43 N. W. 1096.

When lands are granted according to an official plat of the survey, it is a well settled principle that the plat may be referred to.   13 Cyc. p. 635 i (I).

Findings five and six are fully supported by the testimony of the plaintiff set out on pages 40 and 41 of appellant's printed statement and brief, which testimony is wholly corroborated by the defendant's own testimony on pages 41 and 42 of said printed statement.   Certainly the term "accepted mortgage" is not a usual and common term; it is shown by the testimony of both plaintiff and defendant that they meant by its use exactly what the court finds they meant.   (Finding Five and Six).

"Where language of a memorandum is ambiguous, and may refer to different subjects, parol evidence under the familiar rule may be received to show the situation and circumstances of the parties at the time in order to construe their agreement."   Jones on Evidence, 2d Ed. p. 537; Lee v. Butles, 46 U. E. 52; Sec. 1256, Civil Code (S. D. 1903); Osborne v. Stringhorn, 4 S. D. 593; Osborne v. Stringhorn, 1 S. D. 406; Miller v. Way, 5 S. D. 468; Blood v. Fargo & S. E. Co., 1 S. D. 71; Stakes v. Green, 10 S. D. 289; Pearson v. Post, 1 Dak. 220.

Here I wish to call attention to Finding of Fact VIII (Page 19, appellant's printed statement), wherein the court finds, and

appellant raises no objection thereto, that plaintiff tendered prior to May 1, 1910, warranty deed to the real estate particularly described in the agreement, together with an abstract of title thereto showing merchantable title in plaintiff; and at the same time the mortgage then against the land, the notes which same secured, together with a release of said mortgage.

Plaintiff shows by undisputed tesimony (plaintiff testimony, page 54, appellant's printed statement), that he did not remain in possession of the land and did not obtain any use or profits out of the land, and the reason therefore was this contract.

The undisputed testimony (plaintiff's testimony and testimony of G. W. Prather, pages 53, 54, 55, 56, 57, 58, appellant's printed statement), shows that plaintiff sustained not less than one thousand dollars in damages. The interest on the purchase price to the date of the judgment and decree amounted to only $371.58, leaving $628.42 damages still unaccounted for. The court allowed $500.00 for damages which does not exceed the amount in the findings or the amount actually proven.

"Any damages properly pleaded and proven should be assessed." 4 Sutherland Code Pl. & Pr. 3783, citing Deeds v. Stephens, 69 Pac. 534.

"In a suit for specific performance, the court having acquired jurisdiction may assess such damages as appear to have been sustained prior to the filing of the complaint as incidental to the remedy of specific performance." 4 Sutherland Pl. & Pr. 3778, Sec. 6978, citing West v. Washington, etc., R. R. Co., 90 Pac. 666.

The amount and terms of the mortgage are a matter of record, and are a mere matter of mathematical calculation, easily determined and in but one possible way.

Hence defendant will receive all he contracted for, and even that is not necessary. It is the general rule of law, and statutory in this state, that when the vendor gets substantially what he contracts for specific performance will be granted. Substantial performance is all that is required, but plaintiff has done more.

Immaterial defects and technical objections, where the purchaser gets substantially what he contracted for, will not be al-

lowed to defeat a sale. Citing: 26 Am. & Eng. Enc. of Law, p. 108hh; Riggs v. Purcell, 66 N. Y. 193; Hiddleton v. Findla, 25 Cal. 76

SMITH, J. Appeal from the circuit court of Custer county. Action for specific performance of a contract for the sale of real property and to recover damages. Trial to the court. Findings and judgment in favor of plaintiff. Defendant appeals from the judgment and from an order overruling motion for a new trial.

The following portions of the written contract are material to the questions presented on this appeal: "Witnesseth: That the party of the first part (Smith) for the consideration of $500.00 to him in hand paid, hereby agrees to sell to, deliver and convey to the party of the second part (Johnson) his assigns or heirs, a warranty deed, duly signed and executed, upon full settlement of the full purchase price, being $9,600 less $500.00, the following described premises, to-wit: Northeast ¼ of section 30, south ½ of the northwest ¼, the southwest ¼ and west ½ of the southeast ¼, all in section 30, township 5, south of range 8, east B. H. M. containing 480 acres, more or less according to the government survey. Also 80 acres of water right desert filing, with water right of same, and one water right made to Harry M. Sprague. And the second party hereby agrees to pay in cash or by accepted mortgage said purchase price to the party of the first part on or before May 1st, A. D. 1910." The motion for a new trial and the assignments of error question the sufficiency of the evidence to sustain certain of the findings and the competency of the evidence upon which these findings are based. The findings in question are numbered 5, 6, 7, 11, and 14.

[1] The sufficiency of the evidence to support No. 19, discussed in appellant's brief, cannot be raised upon this appeal, for the reason that the trial judge has certified to this court that the testimony in the record is only such as was received in support of findings Nos. 5, 6, 7, 11, and 14, and fails to certify that the evidence in support of finding No. 19 is in the record. This omission, however, is not material, because the competency of the evidence offered to sustain the allegations of the complaint upon which finding No. 19 is based is presented by the specifications of errors occurring at the trial, and the sufficiency of the evidence is deter-

mined by the objections to its competency. But the sufficiency of the evidence to sustain findings of fact 5, 6, 7, 11, and 14 is presented, as well as the competency of the evidence offered in support of these findings. The findings are as follows:

"(5) That by the words 'accepted mortgage,' used in said agreement, defendant and plaintiff meant that defendant could assume the mortgage as mentioned above in paragraph 2, and pay the balance in cash.

"(6) That, if defendant did not choose to assume said mortgage, the same should be paid out of the purchase price.

"(7) That by the terms of the said agreement the plaintiff was to transfer the real estate particularly described therein by warranty deed, and was to transfer the desert filing and the water right filings mentioned therein by such instruments of conveyance or assignment as is usual in the transferring or assigning of such interests. * * *.

"(11) That plaintiff has at all times since the execution of said agreement, and now is, ready and willing, and able, to perform said agreement on his part. * * *

"(14) That real estate described in paragraph one (1) was at the time of the execution of said agreement, and now is, of the reasonable value of ten thousand dollars ($10,000). That the desert filing and the water right filings mentioned in said agreement were of trifling value."

[2] Appellant in the assignments of error contends that the testimony is insufficient to sustain findings 5 and 6, because the contract of sale was in writing, and the phrase "accepted mortgage" is not ambiguous or uncertain, and should be interpreted by the court, and that certain evidence offered and received to aid in ascertaining the meaning and intent of the parties to the contract was therefore incompetent. The general rules for the construction of contracts and ascertaining the intent of the parties are thus stated in 9 Cyc. 577 (A): "The law furnishes certain rules for the construction of written contracts for the purpose of ascertaining from the language the manner and extent to which the parties intended to be bound, and those rules should be applied with consistency and uniformity, and it is not proper for a court to vary, change, or withhold their application. * * * The first and main rule of construction is that the intent of the parties as ex-

pressed in the words they have used must govern. Greater regard is to be had to the clear intent of the parties than to any particular words which they may have used in the expression of their intent. If the words used clearly show the intent, there is no need for applying any technical rules of construction, for, where there is no doubt, there is no room for construction." Id. 587 (H). "To determine the intention of the parties if the meaning is not clear, it is necessary that regard shall be had to the nature of the instrument itself, the condition of the parties executing it, and the objects which they had in view, for which purpose parol evidence is admissible. This rule does not apply, however, where the language of the contract leaves no doubt as to the meaning of the parties, but in such a case the contract is to be construed without regard to extraneous facts." Id. 591 (K). "The question of the meaning of a written contract is ordinarily one of law for the court, and not one of fact for the jury; but, where the construction of a written contract depends upon extrinsic facts as to which there is a dispute, its construction is a mixed question of law and fact, and is for the jury under proper instructions from the court."

In the application of these elementary rules to the case before us, the first question is whether the language used is clear, and leaves no doubt as to the meaning and intent of the parties. By the contract the grantee agrees to pay for the land in "cash or by accepted mortgage." It is to be assumed from the contract that the plaintiff intended to sell, and the defendant intended to buy, the lands described, and that defendant intended to pay for the lands in some manner. The contract says, "in cash or by accepted mortgage." What did the parties mean or intend when they used the words "accepted mortgage"? Was it intended that the grantee might pay the whole purchase price of the land by giving the vendor a mortgage upon the land? Was it the intention that the vendee might pay part of the purchase price in cash and the balance by mortgage? Was it the intention of the parties that the vendee might pay the whole purchase price in mortgage securities if accepted by the vendor in lieu of cash? It is obvious that the meaning and intent of the parties as expressed in the words "accepted mortgage" is not clear, and cannot be ascertained with any reasonable certainty by a construction of the language used.

The case therefore falls clearly within the rule that resort may be had to conversations showing the intent and understanding of the parties, together with surrounding circumstances existing at the time the contract was entered into. The rule permitting such testimony is recognized by section 1256, Civil Code, which provides: "A contract may be explained by reference to the circumstances under which it was made." Miller v. Way, 5 S. D. 468, 59 N. W. 467; Small v. Elliott, 12 S. D. 570, 82 N. W. 92, 76 Am. St. Rep. 630; Grimsrud Shoe Co. v. Jackson, 22 S. D. 114, 115 N. W. 656. There was no error in receiving the evidence complained of.

(3) The next question is whether the evidence received in connection with the words used in the contract is sufficient to sustain the finding of the trial court as to the intention of the parties. The evidence tends to show, and the court found in the second finding of fact, that on March 7, 1910, when the contract was entered into, there was a mortgage on the land on which there was due $4,875, with interest at 7 per cent. from March 1, 1910. The plaintiff testified, in substance, that at the time the contract was entered into he had a conversation with defendant, Johnson, about this mortgage, in which he told Johnson that, if he did not want to pay all the money on the land, he could assume the mortgage and let the sum run; and that the words "accepted mortgage" had reference to this mortgage. Defendant in his testimony admitted this conversation and understanding. The court in findings 5 and 6 found that by the words, "accepted mortgage," both parties understood and meant that the defendant might assume the mortgage then on the land, and pay the balance in cash, or pay the entire purchase price in cash out of which the mortgage should be paid in full, giving the purchaser a clear title. In finding No. 7 the court found that it was the intent of the parties to transfer the desert land filing, and the two water right filings, by such instruments of conveyance or assignment as were usual in transferring or assigning such interests. We are of opinion this interpretation of the contract is correct. Findings Nos. 8 and 9 show the instruments of conveyance and assignments which were tendered as conveyances of the desert filing and water rights, and as a conclusion of law the court finds that the plaintiff performed all the requirements of the agreement

incumbent upon him in the manner and within the time prescribed. No assignments of error as to the sufficiency of the evidence to sustain findings 8 and 9 are in the record, nor does the trial court purport to certify the evidence upon which they are based. This court will therefore presume there was sufficient evidence before the trial court to show that such instruments were usually employed to effect the transfer of such interests, and therefore the tender was a sufficient compliance with the terms of the contract.

[4] Appellant's next contention is that the description of the land in the contract is indefinite and uncertain because the lands are described in the contract as the W. ½ of the S. W. ¼, and the S W. ¼ of the N. W. ¼ of section 30, "according to the government survey." Appellant's real contention appears to be that there is no government survey of lands along the west line of section 30 showing sectional subdivisions; that in such surveys lands along the west line of townships are described as lots and not otherwise. The trial court (finding No. 13) finds that the land lying along the east side of township lines is designated on the plat books of the United States government as lots, said lots being numbered, the numbers beginning in the northwest corner of each section and numbered south, lots 1, 2, 3, 4; that it is the usual and common thing to describe such lots by half and quarter section numbers; and that, when so described, the lands numbered as lots are definitely known and readily ascertained, and that the land described in the contract lies along the eastern side of the township line. The evidence upon which this finding is based is not certified in the record, and we must presume was sufficient to sustain the finding. There is no evidence in the record tending to show that divisional lines of section 30 are not identical with the lot lines.

[5] Appellant's further contention is that the deed tendered by plaintiff in performance of the contract, in which the lands are described by lots, does not show a compliance with the contract, in which the lands are described by sectional subdivisions, and thus fails to show a tender in compliance with the contract. In the case of Ford v. Ford, 24 S. D. 644, 124 N. W. 1108, this court held that a description in a deed, which conveyed "all the right, title and interest in and to all ranches, lands, houses, barns, stables and corrals belonging to Hugh Ford, situated on Belle

Fourche River, Butte County, D. T. commonly known as the headquarters of Ford Bros. Cattle Co.," was sufficient, saying: "We are of opinion that this description was sufficient to convey the lands in question. The office of a description in a deed is not to identify the lands, but to furnish the means of identification, and that a description is considered sufficiently certain which can be made certain, and that a description in a deed would be deemed sufficient if a person of ordinary prudence, acting in good faith and making inquiries suggested by the description given in such deed, would be enabled to identify the property." We hold, therefore, that a tender of a deed describing the property by lots from which the property can be identified as the same property described in the contract is a sufficient compliance with the terms of the written contract in which the same property is described by sectional subdivisions, and that the accompanying words, "according to government survey," make that survey a part of the description for the purpose of identifying the land. Heffelman v. Otsego W. P. Co., 78 Mich. 121, 43 N. W. 1096, 44 N. W. 1151; 13 Cyc. 633 (II).

[6] Appellant argues at some length the proposition that the land described in the deed by lots is 30.87 acres less than the land described by sectional subdivisions in the contract. There is absolutely nothing in the findings of fact or the evidence in the record on which to found this argument; the only allusion in the record to the quantity of land being found in "conclusion of law" No. 8, where it is said, "The deficiency less than four hundred and eighty (480) acres being only thirty and eighty-seven one-hundredths (30.87) acres or about six per cent. (6 per cent.), is not so great but that it is fully covered by the words 'more or less, according to the government survey,' and the defendant is not entitled to any reduction in the purchase price by reason of such deficiency, he having taken the risk." The only question, then, is whether a deficiency of about 6 per cent. in the quantity of land would be covered by the words, "more or less" in the contract. Plaintiff was permitted to testify over defendant's objection that at the time the contract was signed he informed defendant "that the land laid right along this township line and it might be a little long or a little short, and I don't know." But this evidence is of little value in the solution of the precise question presented, which is whether

or not it was known and understood by the parties that the identical land described by sectional subdivisions in the contract was, in fact, described as lots in the government survey. This evidence goes only so far as to disclose that defendant knew the land was on the west line of the township. Are the parties presumed to know that land so situated is surveyed into lots, and to have entered into the contract on the basis of that fact? Upon this question the evidence is entirely silent, and the question can only be solved by an assumption that the parties did, or did not, know that the property purchased and sold was described in the government survey as lots, and not by sectional subdivisions. If both parties knew and understood this fact, they would be presumed to have contracted on that basis. No element of fraud, misrepresentation, or mistake as to the quantity of land enters into this case. The only question involved is the proper interpretation of the language used by the parties. It is contended by appellant that because the description in the contract was by sectional subdivisions, he had a right to assume that the words "more or less" contemplated only such variations in quantity of land as might ordinarily occur in surveys of sectional subdivisions, and not to variations in quantity which might result from accumulations or deficiencies on north or west township lines under the system of government survey. It is contended that appellant might have been willing to risk a variation of quantity such as might exist in the usual sectional surveys, but not the greater uncertainty as to quantity where the land is described as lots.

The real question urged by appellant is whether the words, "more or less," should be held to relate to variations of quantity which occur in sections or to variations in quantity which occur in lots. We have already held that the description by sectional subdivisions in the contract is sufficient to identify the land as the same land described as lots in the deed tendered by plaintiff in the performance of the contract. The last contention, however, presents a different question; and that is whether at the time of entering into the contract it was understood by the parties that the land described in the contract in fact embraced lots, and not sectional subdivisions. No other rule for the solution of this question occurs to us than such as may be found in the application of the rule as to the burden of proof. The burden of proof

as to every fact essential to sustain his theory of the case rests upon the plaintiff. Plaintiff's contention is that the assumption of risk as to the quantity of land related to lots, and he should assume the burden of proof. The contract itself describes the land by sectional subdivisions, and in the absence of evidence tending to show that the parties knew and understood as a fact that the properly intended to be conveyed consisted of lots, and not of sectional subdivisions, we think defendant's contention must prevail, and that we should hold that the words "more or less" were understood and intended by the parties as an assumption of risk of variations in quantity, such as ordinarily occur in sectional subdivisions. But again, from lack of evidence, the court is left without actual knowledge as to what such variations in quantity of land ordinarily are in fact.

The court may take judicial notice that under the system of government surveys each sectional subdivision, except those which adjoin the north and west township lines, is presumed theoretically to contain the quantity of land called for by the description, and that lands adjacent to said township lines described as lots may, in fact, vary greatly in quantity. But this rule has no application to parties to a private contract for the sale of lands, where knowledge of the actual facts must be shown to enable the court to apply the proper rule of construction to ascertain the intent of the parties. We think, however, the court may take judicial notice of material facts connected with the subject-matter of the contract, and should, therefore, construe the contract upon the assumption that both parties were ignorant of the fact that the property described in the contract consisted of lots, and not the usual sectional subdivisions. It follows that we should assume both parties intended to risk only such variation of quantity as might occur in sectional subdivisions, and not the variation of quantity which occurs in lots. It then becomes necessary to consider whether a deficiency of 30.87 acres in the total of 480 acres is greater than was within the contemplation of the parties, when each assumed the risk more or less than 480 acres by the contract. It will be observed that the contract price of the land averaged $20 per acre, and this deficiency in quantity would represent a deficiency in value of substantially $600. Had the description in the contract been by lots, it might be presumed that the parties in-

tended to assume the risk of greater variations in quantity and value which may occur under such descriptions, and that a sale in gross was intended. But, as the description in the contract was by quarter sectional subdivisions, the court may not presume that the parties intended to assume the risk of the greater variations which are known to occur in surveys where the description of sectional subdivisions is by lots; at least, in the absence of evidence to show that the parties knew as a fact that the government survey described the land by lots. There is some evidence that the plaintiff informed defendant orally that there might be "more or less" land, but that statement would apply to the description given in the contract by sectional subdivision, and is not equivalent to a statement that the government survey described the land by lots. Why did plaintiff cause the land to be described in the contract by quarter sectional subdivisions and not by lots? If plaintiff, being the owner of the land, did not know the actual government descriptions, still less can we presume, in the absence of evidence, that the defendant knew it. Respondent's counsel cites a large number of decided cases in which variations in quantity of land were deemed immaterial, because contemplated and covered by the words "more or less" in the conveyance. None of the cases cited cover the precise point under discussion. The question in this case is whether the words "more or less" in the contract were understood and intended by the parties to apply to a description by government quarter sectional subdivisions, or to a description by government sectional subdivisions in lots. Clearly, the burden of proof was upon plaintiff to show at least the fact that defendant knew the land was not in quarter sectional subdivisions but in lots; that he might ask the court to draw the conclusion of fact therefrom; the defendant intended to assume the risk of variation in quantity existing in such cases. This the plaintiff has utterly failed to do, and for that reason the findings and judgment of the trial court are not sustained by the record.

[7] Another question is presented in the record which becomes material in view of the fact that a new trial must be granted, which will be briefly noticed here. While this action is for specific performance of a contract, the only relief which the plaintiff seeks or to which he could be entitled is a judgment awarding him that which would be due him under the terms of the con-

'ract if fully performed. Under the contract, plaintiff could in no event receive anything other or further than the purchase price of the land in money, according to the terms of the contract, with interest thereon, at the legal rate from the time of default in payment. The rule of damages for failure to pay money is the same in an equity as in a law action. Under the contract in question. the only obligation assumed by defendant was for the payment of money, namely, the purchase price of the land. Section 2294 of the Civil Code provides: "The detriment caused by the breach of an obligation to pay money only is deemed to be the amount due by the terms of the obligation, with interest thereupon."

Respondent's counsel in his brief concedes that legal interest on the purchase price of the land to the date of the judgment and decree amounts only to $375.58. The court found that "the plaintiff has sustained damages by reason of the defendant's failure to perform said agreement in the sum of at least one thousand dollars ($1,000), with interest on the purchase price from May 1, A. D. 1910, the date when said money should have been paid, will not reimburse plaintiff for his damages by seven hundred and fifty dollars ($750)," while the judgment and decree of the court is "that plaintiff have and recover of defendant the sum of five hundred dollars ($500) for his damages in this action.' Whatever meaning may attach to this finding, it is clear that the judgment is for a recovery of damages in excess of the amount of legal interest on the purchase price of the land, and it is clear that the court erred in both the finding of fact and the judgment.

[8] Upon the trial the plaintiff, testifying in his own behalf, was permitted, over proper objections, to answer the following question: "In your opinion what was a reasonable amount to fix your loss by reason of not having obtained any use or profits of this land? Answer. "I think that a thousand dollars is a very light loss for me from the 1st day of May to the present time." The ruling of the court was plainly erroneous, and the answer insufficient to sustain the finding referred to. In the certificate settling and allowing the bill of exceptions the trial judge certifies "that the testimony set forth in the foregoing bill of exceptions is all the testimony received at the trial in support of findings of fact Nos. 5, 6, 7, 14, and 11." As the record does not purport to contain the testimony received in support of other findings of

fact, we shall not consider them. But in view of the fact that upon the record before us the trial court appears to have adopted an erroneous view as to the effect of certain material portions of the evidence, as well as the measure of damages, and because of the fact that we are unable to direct a proper judgment upon the record before us, the judgment of the trial court is reversed, and a new trial granted.

The cause is remanded for further proceedings in accordance with the views expressed in this opinion.